317 So.2d 47 (1975)
LUDLOW CORPORATION
v.
ARKWRIGHT-BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY.
No. 48101.
Supreme Court of Mississippi.
July 7, 1975.
*48 White & Morse, Gulfport, for appellant.
Watkins & Eager, W.F. Goodman, Jr., Jackson, Bryant & Stennis, Gulfport, Harding A. Orren, Minneapolis, Minn., for appellee.
Before PATTERSON, SMITH and BROOM, JJ.
BROOM, Justice.
For insurance proceeds to cover damages sustained by Hurricane Camille to certain personal property stored within sheltered facilities at the Port of Gulfport, the appellant sued appellee in the Circuit Court of Harrison County, Mississippi and received a favorable jury verdict in the sum of $108,074. The suit was based upon an insurance policy and appellant alleged its losses to be about two million dollars. We affirm.
Whether the damages were covered by the policy is the chief issue. The appellee's defense was that the damages were not covered by the policy because appellant's property damages allegedly were caused by or resulted from flood, or tidal waves, or wave wash, or water damage to property situated below the flooded high water mark.
This cause is before us the second time, having previously been here on the issue of whether the appellant was entitled to a nonsuit. Arkwright-Boston Mfrs. Mut. Ins. Co. v. Ludlow Corp., 260 So.2d 442 (Miss. 1972). Appellee relies upon a provision of the policy that "if flood ensues or occurs coincident therewith, then the liability *49 assumed hereunder for loss or damage due to such rain ... is limited to the damage above the flood high water mark."
It was appellant's contention that rain entered the buildings wherein its property was situated, through openings or holes created by wind damage. Hurricane Camille struck the Mississippi Gulf Coast on the night of August 17, 1969, and was accompanied by high velocity winds. Some of the winds were of near 200 miles per hour in gusts. As a part of this terrible storm, large quantities of water assaulted the buildings in the form of ocean waves and heavy rains. The jury heard testimony that water in the vicinity in question rose to about ten or twelve feet above the floor of the dock and as high as the top of the door of the warehouse. Other evidence heard by the jury indicated the physical conditions of the building after the storm, showing that the water had reached a height of ten to twelve feet above the warehouse floors. During the storm the roof of the transit warehouse was punctured in many places by flying missiles but in a large measure remained intact, although the walls were gone. There was also given the jury expert testimony (that given by Mr. Young, being challenged here) on behalf of the appellee that the walls were destroyed by flood water and that the valuable personal property (jute) which was damaged in the storm was washed out of the warehouse by the surging tide.

I.
Appellant argues that the trial court committed reversible error in excluding in its entirety the Corps of Engineers' "Report on Hurricane Camille." The basis of appellee's objection (below) to the report was that it contained hearsay testimony but the objector made it clear that he had no objection to placing in evidence those portions of the report which reflect meteorological data such as barometric pressures, recorded wind observations and "those things which in the ordinary course of events would be recorded and covered by the government in a survey ..." The report was voluminous and contained various hearsay, irrelevant, and conclusory type items and in its "Forward" stated that Hurricane Camille was "said to be the most intense hurricane on record" to enter this nation (emphasis added).
As a general rule public records are admissible (as an exception to the hearsay rule) to prove "routine matters" without requiring public officials to appear in court. 32 C.J.S. Evidence § 637, at 810 (1964). Records which reflect "causes and effects ... discretion, expressions of opinions, or ... conclusions" do not fall in the category of routine matters, and are not admissible in every case. 30 Am.Jur.2d Evidence, § 991, at 122 (1967). This Court held in Hall v. Boykin, 207 So.2d 645 (Miss. 1968), that an accident report of a highway patrolman was inadmissible since it was "a conclusion on the part of the patrolman." We said in Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216 (Miss. 1969), that under the minority rule government safety codes, rules and regulations or standards are admissible as "an expert opinion," but that Mississippi follows the majority rule which is that such items without having been given "compulsory force" by statute are not admissible.
In ruling upon the admissibility of such reports as that concerning Hurricane Camille where cause and effect are in issue, considerable discretion must be vested in trial judges. Here the trial judge allowed the appellant to introduce those portions (not objected to) of the report selected by counsel which reflected scientific data as contrasted with hearsay, irrelevant, and textual matter. Additionally, the jury received and had for its consideration: (1) The Dock Log of the vessel S.S. Alamo-Victory with its wind estimates; (2) various weather bureau meteorological data gained by meteorologists; and (3) wind experiments *50 conducted for appellant by experts together with opinions of an engineer. The trial judge ruled that he did not exclude from the jury those portions of the report reflecting "meteorological data, charts, maps or even pictrues." During the trial the appellant introduced portions of the report indicating high water profile, rain gauge readings, and high water elevation.
Upon the posture of the entire record, we cannot say that it was reversible error for the trial judge to refuse to admit the report on Hurricane Camille in its entirety. It should be noted that we are neither called upon to rule upon the admissibility per se of the portions of the report received into evidence nor upon the procedure used to qualify the report for admission because no issue was made in this regard.

II.
Secondly, appellant argues that the opinion evidence of appellee's witness, Charles Young, should not have been admitted as expert testimony. Argument here was that Young possessed "no qualifications beyond any other layman" and that the court erred in permitting him to be qualified as an expert.
Our opinion is that the court did not commit reversible error in ruling that Young was properly qualified as an expert. The court had testimony that Young was a graduate engineer who had worked many years as an engineer. As an adjuster, Young had extensive experience, specializing in the review and adjustment of major losses which included the evaluation and investigation of numerous hurricane losses. We think it was sufficiently shown that this witness was possessed of peculiar skill and knowledge upon the subject matter pertaining to which he was called to testify. As we have previously held, an expert must have acquired special knowledge of the subject matter in question by study of recognized authorities "or by practical experience" enabling him to give the jury assistance and guidance in solving some problem which jurors are not able to solve because of their own inadequate knowledge. Capital Transport Co. v. Segrest, 254 Miss. 168, 181 So.2d 111 (1965); Glens Falls Ins. Co. v. Linwood Elevator, 241 Miss. 400, 130 So.2d 262 (1961); Cooper Tire & Rubber Co. v. Johnston, 234 Miss. 432, 106 So.2d 889 (1958).
Significant here is the fact that the witness Young first testified as an adverse witness called by appellant. Appellant put to him questions involving engineering opinions and is in no position now to complain that the appellee was later allowed to question Young concerning the same subject. We cannot find upon the record that the trial judge abused his discretion in allowing Young to testify as an expert witness because the witness certainly had substantial specialized training plus considerable experience in engineering work. These facts put him in the category of being skilled or expert in his field. In allowing Young to be qualified as an expert witness, the correctness of the trial judge's decision is augmented by the fact that another witness, Clyde Hardy, testified as an expert for appellee without his qualifications being challenged. Hardy's opinions were almost identical with those given by the challenged witness Young.

III.
A third proposition argued by appellant is that the court erred in refusing its instruction No. 8, which stated:
... if you believe that flood ensured or occurred coincident therewith, then defendant's liability for damage caused by said rain is limited to the damage above the flood high water mark.
*51 The instruction was redrawn after being objected to and was changed to read as follows:
However, since flood ensued or occurred coincident therewith, then the defendant's liability for damage caused by said rain is limited to the damage above the flood high water mark.
While there is some logic to appellant's argument that the instruction No. 8 as originally drawn properly left it to the jury to determine whether flood ensued or occurred coincident with rain being driven through openings made by wind, other instructions granted appellant were sufficient to adequately guide the jurors. The instructions granted appellant fairly presented to the jurors every theory of the appellant's case. There is also another reason why no error occurred in this regard. Appellant introduced proof of the ensuing flood by the testimony of Captain Gaughen of the S.S. Alamo Victory, a nearby vessel, and by the testimony of its meteorologist. To the same effect was the finding of the Corps of Engineers introduced into evidence by the appellant.

IV.
The final proposition argued is that the amount of the verdict was inadequate and not responsive to the evidence. It is appellant's contention that the verdict failed to comprehend or include any damages done in the transit warehouse in which extensive damages occurred to appellant's personal property stored therein. It appears very likely that the verdict did not comprehend the transit warehouse loss for the reason that the proof did not sufficiently establish an insured loss to that property. Thus there is no error in this feature of the case.
Two trials were afforded the appellant. The record demonstrates that the learned trial judge committed no reversible error in a very complicated suit. Furthermore, the jury verdict cannot logically be said to be unresponsive to the evidence.
Affirmed.
GILLESPIE, C.J., RODGERS, P.J., and INZER, ROBERTSON and SUGG, JJ., concur.
WALKER, J., took no part.