408 So.2d 464 (1981)
Herbert A. CORTEZ
v.
Donna M. BROWN.
No. 52243.
Supreme Court of Mississippi.
November 4, 1981.
*465 Bryan, Nelson, Allen, Schroeder & Cobb, James N. Compton, Harry R. Allen, Biloxi, for appellant.
Eldon L. Bolton, Jr., Gulfport, for appellee.
En Banc.

ON PETITION FOR REHEARING
WALKER, Justice, for the Court.
The petition for rehearing in this cause is sustained, the opinion entered on a former day of this Court is withdrawn, and this opinion substituted in the place thereof.
Appellee, Donna M. Brown, on March 10, 1977, filed suit in the Circuit Court of the Second Judicial District of Harrison County, against appellant, Herbert A. Cortez, for damages allegedly suffered by her when, on April 30, 1976, the Toyota, in which she was a passenger, was hit in the rear by a Ford station wagon, owned and driven by Cortez.
This cause was first tried on November 27 and 28, 1978, and resulted in a jury verdict for the plaintiff on liability, but the jury assessed her damages at $0. The motion for additur was overruled, but the motion for a new trial was sustained.
The second trial began on May 24, 1979, and was concluded on May 25, 1979, when the jury returned their verdict: "We, the jury, find for the plaintiff and assess her damages at $0."
On plaintiff's motion for additur or new trial, the court granted an additur of $16,000, or a new trial for damages only. Cortez declined to accept the additur and elected to appeal from the order granting a new trial, as authorized by Mississippi Code Annotated section 11-7-213 (1972).
Approximately three months before the rear-end collision (the basis of this suit), on February 6, 1976, the appellee, while employed by the City of Biloxi, slipped on the wet floor of the municipal building and landed on her tailbone. She suffered pain in her lower back and in her left leg. Four or five days later she consulted Dr. M.F. Longnecker, Jr., orthopedic surgeon, who admitted her to the emergency room of Howard Memorial Hospital "because I had a severe backache and I could hardly stand up." Donna testified: "I stayed in the hospital approximately a week to ten days in traction, on heavy medication for muscle spasms in my back." Her back pains persisted, so about the third week in April Dr. Longnecker put her back in the hospital for a myelogram, which was performed on April 21, 1976, by Dr. Richard E. Buckley, a neurosurgeon. At both trials, Dr. Buckley, by deposition, testified:
[T]he myelogram which I performed showed asymmetry at the L5-S1 area, which is the last disc space down in the low back, in that the nerve root on the right side at that level did not fill out like the nerve root on the left side filled out. I felt that this was not of clinical significance, since she had no symptoms referable to the right side. My diagnosis at that time continued to be that of acute chronic lumbosacral strain, and I so advised Dr. Longnecker.
*466 Continuing to complain of lower back pains, Donna was readmitted to the hospital by Dr. Longnecker where, on April 30, 1976, a tomogram was performed. After the completion of this intensive and complicated test, Donna's friend, Debbie Miller, picked her up at the hospital in her Toyota, and Debbie and Donna proceeded about 8:30 that night to a musical concert at Gulfport Harbor. Traffic was heavy, and after Debbie had turned west off of 20th Avenue and had stopped behind a car which was backing out, appellant Cortez, who was going to pick up his son at the Little League ballpark and, while observing the traffic policeman directing traffic, turned right at about 8 to 10 miles per hour and ran into the rear of Debbie's Toyota. Cortez was driving a Ford LTD station wagon. The headlights on Cortez' car were not broken, neither were the taillights on Debbie's Toyota. The damage to the Toyota was stipulated to be $233.18.
There were no complaints of injury by anybody at that time. Debbie took Donna to her mother's home and later that night Donna went with her mother and younger sister to a restaurant to celebrate her sister's birthday. She developed a severe headache and nausea, and had to be carried to her mother's home. Not being able to reach Dr. Longnecker that night, she called his office the next day and talked to his assistant, who suggested increasing the dosage of pain pills that she was already taking for her previous back injury at the City Hall. Donna did not go to see Dr. Longnecker again until the latter part of June, 1976, when her prescription for pain pills was exhausted.
She continued to work for the city, but gave up her night work as hostess at Mary Mahoney's restaurant. Later, she quit her job with the city and went to work at Howard Johnson's at an increased salary.
In her declaration filed against Cortez on May 10, 1977, she alleged that because of the rear-end collision:
[She] was thrown in and about the vehicle and suffered injuries to her head, neck, and back. That as a result of such collision, the Plaintiff herein suffered excruciating pain and mental anguish. Plaintiff further was unable to work for a period of time and suffered a loss of wages and has incurred medical expenses.
That all injuries and damages suffered by the Plaintiff were the direct and proximate result of negligence on the part of the Defendant herein, Herbert A. Cortez.
In May of 1977, another myelogram was performed. Dr. Buckley, by deposition, testified:
I didn't see her at all until sometime in May of 1977, the latter part of May. Again, Dr. Longnecker had seen her off and on with complaints. He asked me to see her in order to assist him in surgery. He had done testing on her which to him indicated that she had mechanical instability of her low back, and she continued to complain of low back pain, and complained of pain in her right leg. He had repeated the myelogram and noted some abnormality and had asked me to see her and assist him in the surgery for the fusion, and my opinion as to whether or not we should explore the right L5-S1 at the same time as the fusion was done. We reviewed the myelogram and talked to Donna, and she did complain of low back pain and stiffness, and complained of pain in her right leg. The myelogram, which I reviewed at that time and have reviewed very recently, was indentical to the myelogram which had been performed by me in 1976; that is, there was minor asymmetry at L5-S1, with the nerve root on the right side, not filling out as compared to the left side, and I agreed with Dr. Longnecker that the L5-S1 disc should be explored in conjunction with the fusion operation, since she was complaining of radicular pain in the right leg.
Drs. Longnecker and Buckley operated on Donna on June 1, 1977, removed a ruptured disc and fused the spine. Donna was in the hospital for about a month recovering from this operation. Dr. Buckley testified:
Based on the history of the accident occurring, with increased back pain, progressing *467 and radiating pain in the right leg, my opinion would be that in all medical probability the automobile accident did contribute to the necessity of her having surgery in 1977.
Q. You think that surgery, in your opinion and in all medical probability, would that surgery have been necessary had the automobile accident not occurred?
A. I don't know how to answer that question. Obviously the automobile accident occurred, and it did hurt her back and her pain worsened thereafter, with pain in her right leg, and in my opinion it did produce the need for surgery. She did have a pre-existing problem on that date as shown in the myelogram. (Emphasis added).
After her operation in June, 1977, Donna and her attorney continued to press her claim against the City of Biloxi for all hospital, doctors and medical expenses and for loss of wages since her fall on February 6, 1976, while working for the City of Biloxi.
On October 31, 1977, after extended negotiations with the city attorney, a settlement with the City of Biloxi was agreed to and a release executed. According to the terms of the settlement, the City of Biloxi paid all hospital, doctors and medical expenses to and including October 31, 1977, totaling $9,000. This $9,000, of course, included all hospital, doctors and medical expenses for the operation for ruptured disc on June 1, 1977, and her thirty-day recovery period in the hospital. In addition, the City of Biloxi paid Donna $2,500 in cash, and agreed to pay her $500 per month for thirty-six months beginning October 1, 1977. Thus, the City of Biloxi paid approximately $30,000 to settle all of Donna's claims against the city.
After effecting this settlement with the City of Biloxi, plaintiff Donna, amended her declaration against defendant Cortez on January 10, 1978. The amended declaration recites:
COMES NOW Donna M. Brown, Plaintiff, by and through the undersigned attorney, and presents this, her Amended Declaration, amending Paragraph V and the Prayer in such Declaration to read as follows, to-wit:
V
That as a direct and proximate result of the collision hereinabove described, the Plaintiff herein was thrown in and about the vehicle and suffered serious and permanent injuries to her head, neck and back. That as a result of such collision, the Plaintiff herein suffered a back injury, requiring extensive hospitalization for removal of a ruptured disc and for fusion of the spine. That as a result of such operation, the Plaintiff herein has incurred substantial loss of wages, hospital expenses and doctor bills. That as a result of such injuries, she has suffered excruciating and mental anguish and will continue to experience pain in the future as a direct and proximate result of the accident and injuries sustained therein. That the Plaintiff herein has suffered a permanent disability of her body. That all such damages set forth hereinabove were the direct and proximate result of negligence on the part of the Defendant herein.
WHEREFORE, premises considered, your Plaintiff demands judgment of and against the Defendant in the sum and amount of $250,000.00, plus all costs of this Court.
The first trial was on November 27-28, 1978. The jury returned a verdict for the plaintiff but assessed her damages at $0. A special circuit judge entered judgment based on the jury verdict. Plaintiff filed a motion for an additur or, in the alternative, for a new trial. The court, after carefully considering the matter and hearing argument, overruled the motion for an additur but did sustain the motion for a new trial on the issue of damages only.
The second trial took place on May 24 and 25, 1979. Cono A. Caranna II testified outside the presence of the jury that he was Biloxi's City Attorney and negotiated the *468 settlement of Donna's claim against the City with her attorney Eldon L. Bolton, Jr. The first official notice that he had of Donna's claim was a letter, dated August 31, 1976, from Bolton. That letter stated:
Honorable Cono A. Caranna, III Vlahos and Caranna Attorneys at Law
Post Office Box 36 Biloxi, Mississippi 39533
Re: Donna Brown vs. City of Biloxi
Dear Cono:
This is to notify you that I represent Donna Brown, who was involved in an accident while working in the City Hall in Biloxi.
I am sure you are aware of the case in that Donna informs me that you have spoken with her about it. She has incurred both medical expenses and loss of wages.
I would like very much for you to call me upon receipt of this letter so that we may discuss the intentions of the City in regard to settlement of any possible claims that Donna might have.
The City Attorney testified that the following medical report, dated September 7, 1977, from Dr. Longnecker was furnished him by Donna's attorney, Eldon L. Bolton, Jr.:
Re: Donna M. Brown
Dear Mr. Bolton:
Per our conversation, the following information is submitted on Donna Brown.
As you know, Donna Brown injured her back while working for the City of Biloxi several months ago, in approximately February, 1976. Following her injury we saw her in my office at which time she demonstrated positive straight leg raising and stocking numbness of the first sacral distribution of the left leg and was admitted to the hospital for observation. She underwent myelography, which was essentially normal. She was treated conservatively for several months without improvement. She has recurrent episodes of the problem related to the back and leg.
In May or June of this year a myelography was again performed and revealed nerve root compromise of the L5-S1 level on the left side, consistent with a ruptured disc. Surgery was advised and exploration by Dr. Buckley and myself revealed a ruptured disc at the L5-S1 level. Also, she had marked instability of her back. Removal of the ruptured disc was accomplished as well as nerve root foraminotomy and lateral spine fusion to stabilize the area. Her postoperative course initially was quite good. She noted immediate relief of pain in her left leg and was discharged from the hospital approximately three weeks postoperatively.
She has been seen in my office in follow-up and x-rays revealed the fusion to be solidifying satisfactorily. She continues to be on limited activity and I have advised her against bending and/or lifting and driving in a car for any length of time.
In summary, it is my opinion that Ms. Brown has progressed quite satisfactorily from surgery, however, I do not feel that maximum benefits of treatment have been obtained. If her progress continues as is, we hope that she will have no serious setback in the future that would necessitate treatment. Ms. Brown will have a permanent disability as a result of the injury which, if no complications arise, should be 15% of the body as a whole. (Emphasis added)
I hope this information will be of help to you. If I can be of further service, please contact me.
The bills which the city was called on to pay, and did pay, are specifically listed in a letter from Bolton to Caranna, dated October 17, 1977, as follows:
RE: Donna M. Brown
Dear Cono:
Enclosed please find a copy of a proposed release. If the release meets with your approval, then let me know and I shall send the original to Donna for her signature.
I am enclosing copies of medical bills which I have in my file. Gulf Coast *469 Community Hospital is due $5,902.31. Richard Buckley is due $900.00. Dr. Longnecker's bill, a copy of which you have, totals $941.00. The First Mississippi National Bank is due $216.80. This amount is due because of the injury. The First Mississippi National Bank took over all accounts receivable from the Coastal Medical Center, and, therefore, payment of that account should be made directly to them. In addition to these bills, Dr. Longnecker is due $46.00 for previous medical services under account No. 70-24758. That amount was not included on the bill forwarded to you. In addition, Dr. Longnecker is due an additional $100.00 for the brace which Donna wore. When it became necessary to purchase the brace, Donna did not have enough money to pay for it. Dr. Longnecker advanced her the $100.00 for the brace, and, therefore, he should be reimbursed. In addition to the Community Hospital bill of $5,902.31, there is another account which shows an additional $145.00 due. That account is No. 5036132. That is for previous medical expenses arising out of the injury. To keep all this straight, Gulf Coast Community Hospital is owed $6,047.31. Dr. Longnecker is owed $1,087.00. Dr. Buckley is owed $900.00. The First Mississippi National Bank is owed $216.80. In addition, there should be one check forthcoming for Donna's October 1st payment in the amount of $500.00. That check can be made payable to Donna M. Brown and forwarded to Charles Ponder at the First Mississippi National Bank. All subsequent $500.00 checks should be forwarded to Mr. Ponder, who will deposit same in Donna's account. The remaining check in the amount of $2,500.00 shall be made payable to Donna M. Brown and myself, as her attorney.
In addition to the above, I have paid Dr. Longnecker $50.00 for a medical report. The medical report was furnished at your request. Donna has not reimbursed me for that and I would appreciate it if you would do so.
If the enclosed release meets with your approval, then I shall forward same immediately to Donna, and when it returns, I will exchange the release for the checks. Donna informs me that she has had some additional medical treatment. She is to forward the bills to me. I shall forward same to you when received. I do not think they amount to very much at this point.
If you have any further questions, please call me upon receipt. Donna is very anxious to have this matter resolved.
City Attorney Caranna answered questions asked by defendant Cortez's attorney in this way:
Q Now, in the process of making this claim, did, did, uh, Mr. Bolton ever advise you or did the Plaintiff ever advise anyone you know of in the City that, uh, that she had been in an automobile accident in which she claimed her back was injured?
A No.
Q Uh, when did you first learn of that?
A I believe I learned of it from you office ...
Q All right. In the process of the claim negotiations, was it asserted by Mr. Bolton that the City had any legal responsibility, a tort responsibility, as a result of that accident?
A That was the basis of us proceeding with this. .. .
... .
A Payment of all of the, uh, medical expenses that the City has made was based on the fact that, uh, that their representation, as well as that of the attending Physician, was that it arose from the fall on the third floor of City Hall. (Emphasis added).
Other claims predating the fall at City Hall were paid by the city's insurance carrier. One claim dated March 19, 1975, where Dr. John B. O'Keefe filled out the claim form recites:

Acute Lumbosacral Strain
3-17-75 Examination of back, patient fell down
 steps of trailer 9 months ago. 25.00
3-17-75 X-Rays Lumbar Spine 35.00

*470 The city was still paying doctors' and medical expenses on July 21, 1978. The record reflects a payment of $106.14 to Donna to cover this item, among others:

 Dr. Irwin, Baton Rouge, La.
 Lumbo-Sacral Sp Multi 55.00

Cortez's counsel moved that the terms of the October 31, 1977, settlement with the city and the general release to the city be admitted into evidence before the jury. This motion was overruled.
In ruling on whether the terms of $30,000 settlement with the City of Biloxi and the release executed pursuant thereto to the City of Biloxi dated October 31, 1977, should be allowed in evidence, the court stated it "looks like the city was a volunteer to me," basing his reason on the case of Clary v. Global Marine, Inc., 369 So.2d 507 (Miss. 1979).
At the completion of this second trial, which was presided over by a regular circuit judge, the jury returned the following verdict: "We, the Jury, find for the Plaintiff and assess her damages at $0." The court entered a final judgment based on the jury verdict of May 25, 1979. Again a motion for an additur or, in the alternative, for a new trial was filed. Thereafter, the court rendered an opinion granting an additur of $16,000 or, in the alternative, a new trial for damages only in the event defendant Cortez declined to accept the additur.
I.
THE COURT ERRED IN NOT ALLOWING THE JURY TO HEAR THE TESTIMONY WITH REGARD TO THE PRIOR CLAIM AGAINST THE CITY OF BILOXI AND THE AMOUNT OF COMPENSATION RECEIVED BY THE PLAINTIFF BECAUSE OF THAT CLAIM.
II.
THE COURT ERRED IN GRANTING A NEW TRIAL ON THE ISSUE OF DAMAGES AS THE JURY VERDICT WAS RESPONSIVE TO THE EVIDENCE AS THERE WAS NO DAMAGES PROVEN BY COMPETENT MEDICAL TESTIMONY BY THE PLAINTIFF; AND FURTHER, THAT CONSIDERING THE COMPENSATION RECEIVED BY THE PLAINTIFF IN HER CLAIM AGAINST THE CITY OF BILOXI, THE JURY VERDICT WAS ADEQUATE.
In our original opinion we distinguished Clary v. Global Marine, Inc., supra, from the facts presented in this case and held that unlike Exxon in Clary, the City of Biloxi was clearly not a volunteer, nor did it gratuitously pay any part of the $30,000 settlement finally effected on October 31, 1977, and implicitly held that the court erred in not allowing the settlement and subsequent release to be admitted in evidence. We were also of the opinion that there was a lack of apportionment of injuries and damages attributable to the automobile accident as distinguished from her slip and fall at the City Hall under the holding of Dennis, et al. v. Prisock, 254 Miss. 575, 181 So.2d 125 (1965). Thus, in our opinion, the zero dollar verdict was justified and we held that the trial court had erred in granting a new trial conditioned upon Cortez accepting an additur of $16,000. We reversed and reinstated the $0. verdict.
On petition for rehearing the appellee, Donna M. Brown, strongly argues that "The majority was in error in allowing an appeal to be taken under Mississippi Code Annotated section 11-7-213 (1972) on issues other than the amount of verdict."[1]
We concede that the court erred in allowing the appellant to raise issues other than the "excessiveness or inadequacy of the verdict."
It is well settled that when a defendant does not accept an additur and appeals from an order granting a new trial *471 because of inadequate damages, the scope of review on appeal is limited to the question of whether the trial court abused its discretion in granting a new trial. City of Meridian v. Dickson, 266 So.2d 143 (Miss. 1972); Biloxi Electric Company, Inc. v. Thorn, 264 So.2d 404 (Miss. 1972) and Screws v. Parker, 365 So.2d 633 (Miss. 1978).
In the Screws' case, the Court said:
In this case the defendants seek to have us review the action of the trial court in directing a verdict against them on the issue of liability and the refusal of an instruction requested by one of them. These questions are beyond the scope of review in this appeal; therefore, we will review the evidence to determine if the trial court abused its discretion by granting a new trial on damages only. (365 So.2d at 634).
Therefore, since all questions except the sufficiency or insufficiency of the evidence to support the verdict with respect to damages is the only question that comes within the scope of review on appeal under section 11-7-213, we must look to the evidence as we find it in the record as though all of the rulings of the trial judge were correct. By the very act of appealing, under section 11-7-213, an appellant, under the facts presented here, must be willing to accept the verdict in all other respects, including the determination of liability. City of Meridian, supra. This acceptance includes all rulings of the trial court on the admissibility of evidence, rulings on instructions to the jury, motions for a directed verdict, peremptory instructions and other errors. In short, by appealing under section 11-7-213, Cortez says to this Court that for the purpose of this limited appeal, he is liable and that he accepts the evidence as admitted and other rulings of the court. He may only complain that the verdict was not against the overwhelming weight of the evidence and that the trial court erred in granting a new trial conditioned upon an additur.
This Court is equally bound to look only to the evidence admitted and must consider all rulings of the trial court as correct in determining whether the trial court erred in granting a new trial because of the inadequacy of the verdict. This is true even though there appears to be error with respect to the admission or exclusion of evidence properly objected to, because what appears to be glaring error is not so glaring or error when properly briefed. Thus, it cannot be considered by this Court.
The majority is of the opinion that there was evidence upon which the jury could base an apportionment of damages arising out of the automobile collision as opposed to the slip and fall at City Hall.
Having determined that the petition for rehearing should be granted, we must now review the record with the above rule in mind to determine whether the trial judge erred in granting a new trial, conditioned upon an additur because the jury verdict was inadequate and against the overwhelming weight of the evidence.
When the record is viewed in this light, there being no evidence before the jury from which it could justifiably find that all of her injuries and damages had been compensated for by the settlement and release executed by her to the City of Biloxi, such evidence not having been admitted in evidence, and in view of the court's peremptory instruction to the jury to find for the plaintiff, it is readily evident that the jury wholly failed to give any consideration whatsoever to the hospital and medical expenses, which the court ruled, we think, erroneously, were voluntarily paid by the City of Biloxi. Further, in view of the court's instruction to the jury to find for the plaintiff, it is evident that they failed to give any consideration whatsoever to the appellee's testimony as to pain that she suffered or the doctors' testimony that her back surgery was necessitated by the automobile collision even though she did have a preexisting back injury. We would point out, however, that when a peremptory instruction to find for a plaintiff is granted, the jury is still the judge of the weight and worth to be given evidence in response to *472 the court's instructions, but they must demonstrate by their verdict in some manner, such as a verdict expressed in terms of dollars and cents or an appropriate finding why they have not returned a compensatory verdict and should be so instructed.
The next question for determination is whether the trial court was manifestly wrong in conditioning the order for a new trial on the acceptance by Cortez of an additur of $16,000. We have carefully considered the record in this regard and are unable to say that fixing the additur at $16,000 was not supported by the evidence to the extent that he committed manifest error.
For the reasons given above, the judgment of the circuit court is affirmed, and the appellant is granted fifteen (15) days in which to signify his acceptance of the additur of $16,000. Upon his failure to accept the additur within fifteen (15) days, a new trial shall be had on the question of damages only.
AFFIRMED.
PATTERSON, C.J., and LEE, BOWLING and HAWKINS, JJ., concur.
ROBERTSON and SMITH, P. JJ., and SUGG and BROOM, JJ., dissent.
ROBERTSON, Presiding Justice, dissenting:
I respectfully dissent.
The majority opinion correctly states that when a defendant does not accept an additur and appeals from an order granting a new trial because of inadequate damages, the scope of review on appeal is limited to the question of whether the trial court abused its discretion in granting a new trial.
In Screws v. Parker, 365 So.2d 633 (Miss. 1978), holding that the trial judge abused his discretion in granting a new trial on damages only unless the defendants accepted an additur of $10,650, and that the jury verdict should be reinstated, we said:
"The principal question involved is whether the trial judge abused his discretion in granting a new trial because damages were inadequate. Section 11-1-55, Mississippi Code Annotated (Supp. 1975) authorizes trial courts to overrule a motion for a new trial upon condition of an additur or remittitur if the court finds the damages are excessive or inadequate for the reasons stated in the statute. The statute further provides that if the additur or remittitur is not accepted, then the court may direct a new trial on damages only. The additur was not accepted by the defendants so we must determine if the court abused its discretion in granting a new trial because of inadequate damages. (Emphasis added).
"It was settled in City of Meridian v. Dickson, 266 So.2d 143 (Miss. 1972) that, on appeal under section 11-7-213, `The only issue that the party appealing can raise is whether the trial court abused its discretion in granting a new trial on the question of damages only.' (Emphasis added).
"In Biloxi Electric Co. v. Thorn, 264 So.2d 404 (Miss. 1972), the defendant, Biloxi Electric Co., did not accept the additur, appealed, and we reinstated the jury verdict of $6,500 holding the trial court abused its discretion by granting a new trial. Plaintiff did not cross-appeal. We reversed the action of the trial court which granted plaintiff a new trial unless the defendant accepted an additur of $6,000, and stated: (Emphasis added).
"`Therefore, the decisive question in this case is whether appellant has shown that the trial court manifestly abused its discretion in granting a new trial. As heretofore stated, a careful review of the evidence in this case convinces us that $6,500 was ample compensation for appellee's injuries. It is manifest to us that the trial court abused its discretion in granting a new trial.' (264 So.2d at 406). (Emphasis added).
"In Dorris v. Carr, 330 So.2d 872 (Miss. 1976), plaintiff, Carr, obtained a judgment for $4,500 against the defendant, Dorris. The trial court granted plaintiff *473 a new trial unless the defendant agreed to an additur of $3,000. Defendant appealed, and we affirmed the action of the trial court in granting a new trial for the inadequacy of damages holding the trial court did not abuse its discretion in granting plaintiff a new trial based on the inadequacy of the damages awarded by the jury. After determining that the trial court properly granted plaintiff a new trial because of inadequate damages, the amount of the additur was then considered. A majority of the court was of the opinion that the amount fixed by the trial judge was proper and justified by the evidence. We provided for an additur on the same amount fixed by the trial court. (Emphasis added).
"From the foregoing it is clear that, when a defendant does not accept an additur and appeals from an order granting a new trial because of inadequate damages, the scope of review on appeal is limited to the question of whether the trial court abused its discretion in granting a new trial." 365 So.2d at 634 (Emphasis added).
In the case at bar, the majority opinion rules that all we can consider is the evidence before the jury and the scope of our review is limited to whether the verdict of the jury was against the overwhelming weight of the evidence. The majority opinion goes on to hold that even though the trial court was wrong in its reasoning, that the City of Biloxi was a volunteer in making a $30,000 settlement with the plaintiff 1 1/2 years after the April 30, 1976, accident with Cortez, that this Court cannot consider the evidence before the trial court, nor its reasons for granting an additur, or in lieu thereof a new trial.
If this Court cannot review before the trial court and its reasons for granting a new trial, then pray tell how this Court can determine whether the trial court abused its discretion in granting a new trial.
Instead of bringing an end to litigation, we are prolonging it and thus defeating the intent and purpose of both Sections 11-1-55 (the additur-remittitur statute) and 11-7-213 (the appeal statute on the excessiveness or inadequacy of damages assessed).
We can't fault the Legislature because both Sections 11-1-55 and 11-7-213 have beneficent purposes and are good law. The responsibility is ours alone and our mistaken and tortuous interpretation of Section 11-7-213 is to blame. Under our interpretation of Section 11-7-213, any appeal under it becomes an exercise in futility. Again I ask: How else can this Court determine whether the trial court abused its discretion in granting a new trial unless we can consider the evidence before the trial court and its reasoning in applying the law to the facts?
In ruling on whether the terms of the $30,000 settlement with the City of Biloxi and the release dated October 31, 1977, executed by plaintiff to the City of Biloxi should be allowed in evidence, the court stated it "looks like the city was a volunteer to me," under Clary v. Global Marine, Inc., 369 So.2d 507 (Miss. 1979). Clary is clearly distinguishable. Clary was Exxon's drilling superintendent on an off-shore drilling rig owned and operated by Global Marine, Inc. for Exxon. It was his responsibility to see that Exxon's policies were followed. On October 28, 1974, he was standing on the drill floor in conversation with Moore, who worked for Global Marine, when an employee for Global Marine actuated a mechanism which pulled taut a nearby cable lying slack across the drill floor. The cable caught Clary from behind and pitched him into the air. In falling, he was seriously injured.
Clary sued Global Marine. It was undisputed that Clary's employer, Exxon, had voluntarily paid Clary "his regular pay as well as reimbursement for any out-of-pocket travel and medical expenses plus doctors' and hospital bills."
In Clary, this Court said:
"We think the chancellor should have applied the `collateral source' rule and awarded Clary a sum to cover these items even though Exxon had paid them. Under this rule:
`... courts generally have held that benefits received by the plaintiff from *474 a source wholly independent of and collateral to a wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. This is known as the "collateral source" rule. Thus, as a general rule, the fact that the plaintiff received gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits, will not be taken into account when computing damages. (22 Am.Jur.2d Damages § 206 (1965).'" (Emphasis added).
369 So.2d at 509.
Unlike Exxon in Clary, the city of Biloxi was clearly not a volunteer, nor did it gratuitously pay any part of the $30,000 settlement finally effected on October 31, 1977.
This settlement with the city was effected after extended negotiations between plaintiff's counsel and the city attorney, under threat of a lawsuit to enforce Donna's claims against her former employer. The compromise settlement was finally effected on October 31, 1977, because the plaintiff, her attorney and her attending physician, Dr. Longnecker, represented to the city that all of her injuries, including the operation on her back, resulted solely "from the fall on the third floor of city hall", on February 6, 1976.
In the case at bar, the trial court based its action in granting a new trial on the false premise that the City of Biloxi was a volunteer. The detailed testimony of the City attorney, the general release, and the itemized $30,000 settlement (all before the trial court) proved beyond peradventure that the City of Biloxi was not a volunteer, did not settle willingly and finally settled only to avoid a threatened law suit. The majority finds that the trial court ruled erroneously that the City of Biloxi was a volunteer. Yet the majority say that this Court cannot consider the fact that the very foundation and sole reason for granting an additur or new trial was wrong.
The only time there can be double recovery of medical, hospital and doctor's expenses and wages is where such expenses were first paid by a volunteer. Yet the trial court found on the mistaken premise that the City of Biloxi voluntarily paid $9,000 medical and hospital expenses and $18,000 lost wages that the jury was mistaken in not again awarding these damages to the plaintiff.
Since the trial court was in error in finding that the City of Biloxi voluntarily paid all of Donna's expenses, it follows that the court was in error in not letting in for the jury's consideration the City Attorney's testimony, the itemized settlement, the general release and all details of the negotiated settlement with the City.
After two extended trials, 1222 pages of testimony and exhibits filling 9 volumes, we have now traveled full circle and are back where we began.
In the first trial on November 27 and 28, 1978, testimony of the $30,000 settlement with the City was admitted into evidence. The jury, after considering all the evidence, returned a verdict for the plaintiff but assessed her damages at $0. A new trial was granted. The new trial was held by another judge before another jury on May 24 and 25, 1979. The evidence of the settlement with the City was not admitted before the jury this time, yet this new jury returned a verdict for the plaintiff but assessed her damages at $0. Now this third time around, this Court says that the City not being a volunteer, the evidence of the settlement with the City of Biloxi should be admitted before the jury.
We have said times without number that the jury is the trier of facts. They can accept or reject all or any part of any witness's testimony.
In the case at bar, the jury had before it strong evidence that the impact between Cortez's car and the Miller Toyota was slight. Neither the headlights on Cortez's car nor the taillights on Debbie Miller's car were broken, the complete damages to Debbie Miller's Toyota were $233.18, and Cortez's auto was traveling six to eight miles an hour when the impact occurred. Donna herself testified that the impact was akin to the ups and downs of a roller coaster ride.
*475 The jury also had before it Dr. Longnecker's testimony (by deposition) that all of his charges had been paid by the City of Biloxi. The jury also had before it Dr. Longnecker's letter of August 25, 1977, to Mr. Bolton, plaintiff's attorney. This letter started with this language:
"As you know, Donna Brown injured her back while working for the city of Biloxi, several months ago, approximately February of 1976."
This letter traced in detail Donna's symptoms, his treatments, the operation for ruptured disc in May or June, 1977. The automobile accident of April 30, 1976, was not mentioned in Dr. Longnecker's letter. Everything was attributed by Dr. Longnecker to the February 6, 1976, fall at the City Hall.
In his September 7, 1977, letter to plaintiff's attorney, Dr. Longnecker again gave a detailed report of Donna's back troubles, his treatment of her, her surgery and recovery. Again no mention was made of the Cortez April 30, 1976, slight rear-end accident. Again, all symptoms, injuries, operation, etc. were attributed by Dr. Longnecker to her fall at City Hall "in approximately February, 1976".
A letter from Dr. Longnecker to Mr. Bolton, plaintiff's attorney, dated October 8, 1976 (5 months after the Cortez accident) never mentions the Cortez incident and attributes all injuries to the February, 1976, fall at City Hall.
Dr. Richard E. Buckley, neurosurgeon, who performed a myelogram on April 21, 1976, at Dr. Longnecker's request, and who reviewed a later miyelogram performed in May, 1977, on Donna, testified (by deposition) as to the two myelograms:
"The myelogram, which I reviewed at that time and have reviewed very recently, was identical to the myelogram which had been performed by me in 1976; that is, there was minor asymmetry at L5-S1, with the nerve root on the right side not filling out as compared to the left side, and I agreed with Dr. Longnecker that the L5-S1 disc should be explored in conjunction with the fusion operation, since she was complaining of radicular pain in the right leg." (Emphasis added).
The first myelogram (April 21, 1976) was performed after the fall at city hall (February 6, 1976), but was performed 9 days before the Cortez incident (April 30, 1976). The second myelogram was performed in May, 1977, over a year after the Cortez incident, yet Dr. Buckley found them identical. Dr. Buckley was not informed of the automobile accident of April 30, 1976, until after surgery on Donna in June, 1977. Dr. Buckley further testified:
"Q You think that surgery, in your opinion and in all medical probability, would that surgery have been necessary had the automobile accident not occurred?
"A I don't know how to answer that question. Obviously the automobile accident occurred, and it did hurt her back and her pain worsened thereafter, with pain in her right leg, and in my opinion it did produce the need for surgery. She did have a pre-existing problem on that disc as shown in the myelogram.
"Q Let me rephrase my question to this extent 
"A Some other type trauma may well have produced symptoms which would have ultimately required surgery with or without an automobile accident."
Both Dr. Longnecker's and Dr. Buckley's testimony was equivocal. Both injuries had this equivocal medical testimony squarely before him. From both Donna's testimony and Cortez's testimony, the proof was that the impact was slight. Neither the headlights on Cortez's car nor the taillights on Debbie Miller's car were broken, the complete damages to Debbie Miller's Toyota were $233.18, and Cortez's auto was traveling six to eight miles an hour when the impact occurred. Donna herself testified that the impact was akin to the ups and downs of a roller coaster ride.
In the very recent case of Gathright v. State, 380 So.2d 1276 (Miss. 1980), Justice Walker, writing for a unanimous court, said:

*476 "This Court has in numerous cases, too many to mention, said that when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the state's witnesses and the appellant's witnesses, including the appellant himself. We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court. Davis v. State, 320 So.2d 789 (Miss. 1975); Wilson v. State, 264 So.2d 828 (Miss. 1972); McLelland v. State, 204 So.2d 158 (Miss. 1967)." 380 So.2d at 1278. (Emphasis added).
The burden was on the plaintiff to prove with reasonable certainty her damages suffered in each incident of non-concurring negligence, so that the jury could reasonably apportion the damages sustained in two distinct and non-related accidents. Dennis v. Prisock, 254 Miss. 574, 181 So.2d 125 (1965).
With absolutely no testimony as to how the jury should apportion damages between the fall at the municipal building on February 6, 1976, and the slight rear-end accident on April 30, 1976, with Dr. Longnecker's written reports of August 25, 1977, and September 7, 1977, attributing all of Donna's back problems including surgery exclusively to the February 6, 1976, fall at City Hall, and with the knowledge that a settlement had been effected with the City on October 31, 1977, 1 1/2 years after the Cortez incident, both juries were justified in their verdicts under two different theories: one that she had suffered no actual damages as a result of the April 30, 1976, rear-end collision for which Cortez was responsible, or that she had recovered complete damages for all of her injuries from the City on October 31, 1977.
Because the trial court abused its discretion in granting a second new trial on damages alone when its sole reason for doing so was its admittedly erroneous reasoning that the City of Biloxi was a volunteer and gratuitously paid plaintiff Brown $30,000 in settlement of her claims against the City; and because the $0. damages verdict of the jury is supported by substantial evidence, I think that this Court should reverse the order of the trial court granting a new trial and reinstate the verdict of the jury.
SMITH, P.J., and SUGG and BROOM, JJ., join in this dissent.
NOTES
[1] Section 11-7-213. Every new trial granted shall be on such terms as the court shall direct; and no more than two new trials shall be granted to the same party in any cause. Provided, however, that when the sole ground for a new trial is the excessiveness or inadequacy of damages assessed, the party aggrieved may elect to appeal from the order granting a new trial.