418 So.2d 833 (1982)
Billy W. SCHOPPE, J. McDonald Williams, Trammel S. Crow, Lee Bean, and Durant Estates Corporation N.V., d/b/a the Refuge Plantation Company
v.
APPLIED CHEMICALS DIVISION, MOBLEY COMPANY, INC.
No. 53371.
Supreme Court of Mississippi.
August 25, 1982.
*834 Barrett, Barrett & Barrett, Pat M. Barrett, Jr., Lexington, for appellants.
Upshaw & Ladner, Tommie Williams, Greenwood, for appellees.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Holmes County wherein Billy W. Schoppe, J. McDonald Williams, Trammel S. Crow, Lee Bean and Durant Estates Corporation N.V., d/b/a The Refuge Plantation, plaintiffs/appellants, brought suit against Illinois Central Gulf Railroad Company, Mobley Company, Inc., and Applied Chemicals Division, Mobley Company, Inc., defendants/appellees, for damages to soybean and cotton crops which resulted from the negligent application of chemicals along the Illinois Central Gulf Railroad tracks, for defoliant purposes, which drifted onto appellants' crops, causing a reduction in yield in 1977.
Prior to trial, Illinois Central Gulf Railroad Company and Mobley Company, Inc., were nonsuited. Applied Chemicals Division, the sole remaining defendant and appellee, admitted liability for the damage, however, denied the extent of the damages claimed. The jury returned a verdict for plaintiffs/appellants in the amount of $41,000. However the trial court, upon the motion of Applied Chemicals Division, Mobley, Company, Inc., ordered a remittitur of $30,000 or a new trial on the issue of damages if plaintiffs declined to accept the remittitur, which reduced the award to $11,000. Aggrieved of the trial court's actions, plaintiffs appeal to this Court as authorized by Mississippi Code Annotated section 11-7-213 (1972) urging reinstatement of the jury verdict. We reverse and reinstate.
*835 The Refuge Plantation consists of 2700 acres of farmland located in Leflore and Holmes Counties. This land was purchased by appellants in 1977 for the purpose of raising soybeans and cotton. The length of the plantation spans approximately 3 1/2 miles. The property is bisected by the Illinois Central Gulf Railroad tracks and Highway 49 which traverse the property in a northeasterly direction.
In April 1977, approximately 1000 acres of soybeans and 600 acres of cotton were planted on the Refuge Plantation. On June 18, 1977, appellee applied Spike, Karmex, Paraquat and Banvel 720 on the Illinois Central Gulf Railroad right-of-way through the Refuge Plantation for defoliation of the railroad right-of-way. The chemicals were applied twenty-five feet from the track's center line. On the day of the application, the wind was blowing from the west with a varied velocity of zero to six miles per hour.
Although appellee readily admitted liability for any damages caused by its application of the chemicals, it denied the extent of damages as claimed by appellants. Bill Schoppe, a partner in Crow Farms, compared the plants in five representative locations by making boll counts on the cotton plants and pod counts on the soybean plants. According to Schoppe, the area affected by the chemical spray was 275-300 yards east of and parallel to the railroad tracks. Schoppe testified that 225 acres of the cotton crop were affected by the spray which reduced the yield on that acreage by 75%. He also asserted that 102 acres of soybeans were affected which reduced the soybean crop on that acreage by 65%. Schoppe approximated their damages in the amount of $81,485.03.
Robert Kennedy, an employee of the Refuge Plantation for some twenty-six years, asserted the crops were damaged halfway between the railroad tracks and the highway. Fred Grossman, who began managing the Refuge Plantation in July 1977, testified that 200-225 acres of cotton were affected by the spraying while 100-125 acres of soybeans were affected by the chemical defoliant. According to Grossman, the reduction in yield on the affected acreage was substantially the same as that testified to by Schoppe.
The appellee produced two expert witnesses in crop damages and Bill Doyle, the plantation manager before Fred Grossman. These witnesses substantially undermined appellants' damage estimates. Albert Lee Frazier, Jr., a crop-damage claim investigator, was contacted by Bill Doyle to investigate the crop-damaged area. According to Frazier, boll counts were not an accurate measure of determining what yield a crop would produce. Frazier asserted only thirty acres of cotton were affected by the chemical spray. Of the thirty acres, ten acres were affected moderately to severely, which would reduce yield, while twenty acres were only affected slightly, producing little or no yield loss.
As to the soybean crop, Frazier testified approximately twenty acres of beans were affected which would have produced a tenbushel-per-acre loss. Frazier approximated appellants' damages at $2850. Dennis F. Bouchard, who was employed by the Refuge Plantation as an entomologist, asserted the damage was mainly confined along the railroad track bed. Bouchard estimated ten acres of the cotton crop were severely damaged so that between 75% and 80% of that crop would be lost. Bouchard asserted another forty acres of the cotton crop suffered symptoms. However, the yield therefrom would only be affected some 0% to 10%. As to the soybeans, Bouchard asserted twenty-five acres were affected enough to see some response and possibility of slight yield reduction. Five of these acres were described as being hit pretty hard while the remaining twenty acres had symptoms ranging from 0% to 10%. Bouchard placed the total amount of damages at $5500.
Bill Doyle, employed at the Refuge Plantation as farm manager in 1977, testified the chemical spray damaged approximately twenty-seven acres of cotton and sixty acres of beans. Doyle estimated a 75% yield reduction on the twenty-seven acres of cotton and a 50% yield reduction on the sixty acres of soybeans.
*836 At the conclusion of the trial, the cause was submitted to the jury which returned a verdict in favor of appellants, assessing their damages at $41,000. However, upon motion of the appellee, the trial court ordered a $30,000 remittitur or a new trial on the issue of damages if appellants chose not to accept the remittitur. Appellants declined to accept the remittitur and appeal to this Court, urging reinstatement of the jury verdict.

I. Did the trial court abuse its discretion in granting a new trial on the issue of damages conditioned upon appellants' refusal of a remittitur?
The scope of review, when an appellant declines to accept a remittitur and appeals from an order granting a new trial because of excessive damages, is limited to the question of whether the trial court abused its discretion in granting a new trial. Cortez v. Brown, 408 So.2d 464 (Miss. 1981). Generally, this Court looks with favor upon the action of the trial court in granting an additur or remittitur pursuant to Mississippi Code Annotated 11-1-55 (Supp. 1981). Mississippi State Highway Comm. v. Antioch Baptist Church, Inc., 392 So.2d 512 (Miss. 1981). By appealing the trial court's granting of a new trial due to inadequacy of damages, the appellants are asking that this Court reinstate the judgment and by their very act of appealing they must be willing to accept the verdict in all other respects, including the determination of liability. Screws v. Parker, 365 So.2d 633 (Miss. 1978). Liability was admitted in this case and there is no question of contributory negligence. The sole question is whether the jury verdict of $41,000 was substantiated by the evidence or was excessive.
In Biloxi Electric Co. v. Thorn, 264 So.2d 404 (Miss. 1972), this Court pronounced the guidelines for determining the excessiveness of damages:
As to any excessive verdict, it is said in 22 Am.Jur.2d Damages section 366, p. 473 (1965):
The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess. (264 So.2d at 405)
The question of the adequacy or inadequacy of damages is one of the most perplexing questions with which the courts must struggle. Dickey v. Parham, 295 So.2d 284 (Miss. 1974). Awards fixed by juries are not merely advisory and will ordinarily not be set aside except where so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable, and outrageous. Mississippi State Hwy. Comm. v. Antioch Baptist Church, supra. Evidence of bias, passion, or prejudice on the jury's part is an inference to be drawn from contrasting the amount of a verdict with the amount of damages. Walton v. Scott, 365 So.2d 630 (Miss. 1978).
In the case sub judice, appellants alleged damages to their crops in the amount of $102,015.50. Liability was not disputed. At the time the chemical applications were made, the wind speed varied from zero to six miles per hour. It was undisputed that the railroad tracks traversed the farm for approximately 3 1/2 miles. The remaining evidence as to the extent of damages was sharply in conflict. Appellants' witnesses consisted of Bill Schoppe, Robert Kennedy and Fred Grossman. Schoppe was a partner in the ownership of Refuge Plantation while Kennedy and Grossman were employees thereof.
Schoppe, through his boll and pod counts in late August and early September, asserted a damage figure of $81,485.03. This figure was based on a 75% yield reduction to 225 acres of cotton affected by the chemical spray and a 65% yield reduction to 102 acres of soybeans affected by the spray. Grossman, who became farm manager in late July or early August, substantiated the *837 amount of acreage affected by the spray as testified to by Schoppe. Kennedy, an employee of the Refuge Plantation for twenty-six years, asserted the damage to the crops extended from the railroad tracks midway to the highway.
Although none of the witnesses had any formal education in agriculture, the three witnesses had numerous years of experience in farming (Schoppe, 8 yrs.; Kennedy, 26 yrs.; and Grossman, all his life). Formal education is not the sole process of becoming an expert in a field. An expert witness may qualify to give an opinion through his experience only. Ludlow Corp. v. Arkwright-Boston Mfrs. Mut. Ins. Co., 317 So.2d 47 (Miss. 1975).
Appellee's witnesses consisted of Bill Doyle, the farm manager of Refuge Plantation during 1977, Albert Lee Frazier, Jr., a crop-damage investigator, and Dennis Ford Bouchard, the entomologist employed by the Refuge Plantation in 1977. Their witnesses approximated appellants' damages as between $2850 and $5500, asserting a substantially lesser amount of acreage being affected by the spray. These witnesses denied that Schoppe's method of computing his yield loss was accurate and also contended that the A.S.C.S. records of the Refuge Plantation were not compatible with the extent of loss claimed by appellants.
Appellee contends its witnesses were more credible because of their qualifications and lack of interest in the cause. Opinions of experts, however, are merely advisory and are not to be blindly followed by a jury. Rather they are to be weighed and judged in view of all the testimony in the case and the jury's own general knowledge of affairs and are to be given such consideration as the jury believes they deserve. Mississippi State Hwy. Comm. v. Madison County, 242 Miss. 471, 135 So.2d 708 (1961). Nor can it be said that appellee's witnesses were disinterested in the cause. The experts were hired by appellee, and Bill Doyle had previously been fired by appellants. The amount of time each witness spent on the plantation was an issue to be considered by the jury as to how much weight should be accorded the witnesses' testimony.
The amount of damages awarded by the jury was certainly within the range of evidence presented by both sides. Although Schoppe's computation of damages may not have been the most accurate method, his approximation remained in evidence. Nor can the A.S.C.S. records produced by the appellee be blindly followed. 1977 was the first year appellants farmed the Refuge Plantation. According to Schoppe, their farming methods were drastically different and better than those used by the previous owners. Since different methods were employed on the plantation during 1977, aside from different atmospheric conditions, these records were of little value to the jury as far as determining the amount of yield reduction appellants suffered as a result of the chemical spray.
After a careful examination of the entire record and the briefs, this Court is of the opinion that the trial court abused its discretion by granting appellee's motion for a remittitur or, in the alternative, a new trial on the issue of damages. Appellants, through their numerous years of experience in farming, approximated their damages based upon their investigation and experience. Appellee's evidence was in serious conflict therewith. However, it was not for the trial judge to choose in effect to disregard appellants' evidence and remit the jury's award of damages which was well below that testified to by appellants. The remittitur ordered by the learned trial judge reduced the jury award by approximately two-thirds and that testified to by appellants by approximately six-sevenths. The credibility of the witnesses was for the jury's determination. Therefore, this case should be and is hereby reversed and the jury verdict reinstated.
REVERSED AND JURY VERDICT REINSTATED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and PRATHER, JJ., concur.